UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No. 1:21-cr-00165 (TSC) |
| v. : | |
| : | |
| DONA SUE BISSEY, : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the Acting United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the Government requests that this Court sentence Dona Sue Bissey (hereinafter "the Defendant") to three years of probation, including the mandatory and discretionary conditions set forth below, $500 in restitution and 40 hours of community service.

**I.   Introduction**

The Defendant, Dona Sue Bissey, and her friend, Anna Morgan-Lloyd,[1] participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of the certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred law enforcement officers, and resulted in more than a million dollars' worth of property damage.

The Defendant pleaded guilty to one count of 40 U.S.C. § 5104(e)(2)(G), Parading, Demonstrating, or Picketing in a Capitol Building. As described herein, the Government is

---

[1] Ms. Morgan-Lloyd was separately charged in *United States v. Morgan-Lloyd*, 21-cr-164 (RCL), and was sentenced to three years' probation, $500 in restitution, and 120 hours of community service.

1

recommending probation in this rare case in light of the Defendant's early acceptance of responsibility and agreement to plead guilty. Early in this investigation, the Government made a very limited number of plea offers in misdemeanor cases that included an agreement to recommend probation. This is one of those rare cases, along with *Morgan-Lloyd*. *See supra*, note 1. The Defendant accepted the Government's offer promptly, and the Government is abiding by its prior agreement to recommend probation.

**II.     Factual and Procedural Background**

*The January 6, 2021 Attack on the Capitol*

To avoid exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF 22 (Statement of Offense), at 1-9. As this Court knows, a riot cannot occur without rioters, and each rioter's actions – from the most mundane to the most violent – contributed, directly and indirectly, to the violence and destruction of that day. With that backdrop we turn to the Defendant's conduct and behavior on January 6th.

*Dona Sue Bissey's Role in the January 6, 2021 Attack on the Capitol*

On January 6, 2021, the Defendant and her friend, Anna Morgan-Lloyd, attended the rally on the Ellipse. When the speech finished the Defendant and Morgan-Lloyd walked with the crowd toward the Capitol building. After arriving at the Capitol and ascending the steps, the Defendant participated in the protest and took photos of the other protestors, including those in or around the scaffolding on the western front of the building.

The Defendant and Morgan-Lloyd then entered the Capitol building from the Eastern Front, walked through a single hallway, and remained in the Capitol for a little over ten minutes. While inside the Capitol building, the Defendant appeared in a photo with Morgan-Lloyd and two

other individuals, one of whom is holding a Trump campaign flag.  The Defendant later posted the photo on Facebook with the caption "Inside the Capitol Building."

The Defendant also posted a picture of an elderly woman with a "Make America Great Again" hat and wrote "This is Our Warrior Linda.  We stayed with her and her daughter Stacey all day.  They are somewhat locals.  When we Marched to Capitol she said "I'm going in" and she lead the way.  We went in [] This photo taken at Capitol entry right before[.]"

The Defendant also posted a screenshot of a Twitter post which stated, "This is the First time the U.S. Capitol had been breached since it was attacked by the British in 1814" and wrote "We were inside for reals! Linda led the way!!  She is a True Patriot and Warrior!!!"

On January 7, 2021, the Defendant posted a photo on Facebook, tagging Morgan-Lloyd and another individual, and wrote "We are home. Thank You to ALL that messaged checking in and concerned.  It was a day I'll remember forever.  I'm proud that I was a part of it!  No Shame. BTW turn off the #FakeNews."

On January 8, 2021, the Defendant posted two photos from the western front of the Capitol building.  The photo included images of protesters climbing the scaffolding and another other with a protestor holding a stolen and broken sign that read "Speaker of the House."  The Defendant wrote on the post "This really happened! Anna Morgan-Lloyd took the photo."

On January 11, 2021, the Defendant posted a photo on Facebook which showed individuals walking down the steps of the Capitol building.  The Defendant wrote "On our way down" and tagged Morgan-Lloyd.

*Dona Bissey's Interview*

Early in the investigation, on February 24, 2021, the Defendant agreed to be interviewed by law enforcement. She accepted responsibility for her actions and admitted that she had entered the Capitol and remained for less than ten minutes. The Defendant also admitted that she had a photo taken of herself within the building. She claimed that while she saw "people pushing through the fencing at the bottom of the steps" and heard a window get broken, she and her friends that attended the rally were "shocked by what they saw on the news" and did not "have any idea of the other activities at the Capitol." The Defendant further claimed that she would not have gone inside the building if she had known she was not allowed.

*The Charges and Plea Agreement*

On February 23, 2021, the Defendant was charged by complaint with violating 18 U.S.C. §§ 1752(a)(1) and (2) and 40 U.S.C. §§ 5104(e)(2)(D) and (G). On February 24, 2021, she was arrested outside her place of employment. On March 1, 2021, the Defendant was charged by Information with the same four offenses. On July 19, 2021, the Defendant pleaded guilty to a violation of 40 U.S.C. § 5104(e)(2)(G), Parading, Demonstrating, or Picketing in the Capitol Building. Under the plea agreement, the Defendant agreed to pay $500 in restitution to the Department of the Treasury.

**III.    Statutory Penalties**

The Defendant now faces a sentencing on a single count of 40 U.S.C. § 5104(e)(2)(G). As noted by the plea agreement[2] and the U.S. Probation Office, she faces up to six months of imprisonment and a fine of up to $5,000.[3] She must also pay $500 in restitution under the terms

---

[2] The plea agreement is incorrectly dated March 18, 2021. The correct date is May 18, 2021.
[3] Because Ms. Bissey has pled guilty to a petty offense, a term of supervised release is not authorized. *See* 18 U.S.C. § 3583(b)(3).

of her plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

IV.     **Sentencing Factors Under 18 U.S.C. § 3553(a)**

In this case, sentencing is guided by 18 U.S.C. § 3553(a). Some of the factors this Court must consider include: the nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the defendant, *id.*; the need for the sentence to reflect the seriousness of the offense and promote respect for the law, § 3553(a)(2)(A); the need for the sentence to afford adequate deterrence, § 3553(a)(2)(B); and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. § 3553(a)(6).

    **A.  The Nature and Circumstances of the Offense**

The attack on the U.S. Capitol, on January 6, 2021 is a criminal offense unparalleled in American history. It represented a grave threat to our democratic norms; indeed, it was the one of the only times in our history when the building was literally occupied by hostile participants. By its very nature, the attack defies comparison to other events.

While each defendant should be sentenced based on their individual conduct, each person who entered the Capitol on January 6 did so under the most extreme of circumstances. As a person entered the Capitol, they would—at a minimum—have crossed through numerous barriers and barricades and heard the throes of a mob. Depending on the timing and location of their approach, they also may have observed extensive fighting with law enforcement and likely would have smelled chemical irritants in the air. Make no mistake: *no rioter was a mere tourist that day*.

Additionally, while looking at the Defendant's individual conduct, we must assess such conduct on a spectrum. This Court, in determining a fair and just sentence on this spectrum, should look to a number of critical factors, to include: (1) whether, when, how the defendant entered the Capitol building; (2) whether the defendant engaged in any violence or incited violence; (3) whether the defendant engaged in any acts of destruction; (4) whether during or after the riot, the defendant destroyed evidence; (5) the length of the defendant's time inside of the building, and exactly where the defendant traveled; (6) whether the defendant cooperated with, or ignored, law enforcement; (7) the defendant's statements in person or on social media; and (8) whether the defendant otherwise exhibited evidence of remorse or contrition. While these factors are not exhaustive nor dispositive, they help to place each individual defendant on a spectrum as to their fair and just punishment.

The Government is recommending probation in this case in light of the Defendant's early acceptance of responsibility and agreement to plead guilty. As described above, early in this investigation, the Government made a very limited number of plea offers in misdemeanor cases that included an agreement to recommend probation. This is one of those rare cases, along with *Morgan-Lloyd*. *See supra*, note 1. The Defendant is a 53-year-old hairdresser who lacks any criminal history, remained in a limited part of the building for a short period of time, does not appear to have destroyed evidence, cooperated with law enforcement after her arrest, and has expressed remorse for her actions.

B. **The History and Characteristics of the Defendant**

As set forth in the PSR, Dona Sue Bissey is a 53-year-old woman with no prior criminal history. The Defendant attended two years of higher education at the University of Indiana and then left college to attend the Hair Arts Academy in Bloomington, Indiana. The Defendant told

6

probation that she has been a hairdresser for over 20 years and owned a business, Hot Heads Hair Studio. The Defendant appears to have strong familial support – she is married with a son and a stepson. The Government is not aware of the Defendant having an association with extremist groups, promoting violence, or engaging in any other criminal conduct. The Government has been informed that the Defendant has been compliant with her conditions of release. The Government notes, however, that there is evidence that the Defendant subscribes to and has made social media posts in support of Q-Anon.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds, and all that it involved, was an attack on the rule of law. "The violence and destruction of property at the U.S. Capitol on January 6 showed a blatant and appalling disregard for our institutions of government and the orderly administration of the democratic process."[4] As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases arising out of the riot on January 6, 2021, including in misdemeanor cases. *See United States v. Joshua Bustle and Jessica Bustle*, 21-cr-238-TFH, Tr. at 3 ("As to probation, I don't think anyone should start off in these cases with any presumption of probation. I think the presumption should be that these offenses were an attack on our democracy and that jail time is usually -- should be expected.") (statement of Judge Hogan).

---

[4] Federal Bureau of Investigation Director Christopher Wray, Statement before the House Oversight and Reform Committee (June 15, 2021) (hereinafter "FBI Director Wray's Statement"), available at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/Wray%20 Testimony.pdf

### D. The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010). Again, the government abides by its early agreement to recommend probation in this case. The following factors weigh in favor of that recommendation with respect to this particular defendant and the need for deterrence.

*First,* between the time of her arrest and her initial appearance on the complaint, the Defendant was incarcerated for approximately two days. As the Court knows, for an individual that has no prior criminal history or interactions with law enforcement and the penal system, any period of incarceration can be eye-opening and serve as a deterrent to future criminal conduct.

*Second*, the imposition of a term of probation and, therefore, supervision, will impose conditions upon the Defendant and serve to deter any future criminal conduct. *See* 18 U.S.C. § 3561(c)(2). In addition to the mandatory conditions of probation,[5] the Government requests that the Court impose certain discretionary conditions, including that the Defendant:

(1) refrain from possessing a firearm, destructive device or other dangerous weapon;

(2) work in community service for 40 hours or as directed by the Court;

(3) report to a probation officer as directed by the court or probation;

---

[5] Mandatory conditions of probation include, among other things, that the Defendant (1) not commit another Federal, State, or local crime during the term of probation; (2) not unlawfully possess a controlled substance; (3) refrain from use of a controlled substance and submit to at least one drug test within 15 days of release on probation and at least 2 periodic drugs tests thereafter (as determined by the court) for use of a controlled substance; (4) make restitution and pay the special assessment; and (5) notify the court of any material change in Defendant's economic circumstances that might affect the Defendant's ability to pay restitution, fines or special assessments. *See* 18 U.S.C. §3563(a).

    (4) permit a probation officer to visit her at her home or elsewhere as specified by the Court;

    (5) answer inquiries by a probation officer and notify the probation officer promptly of any change in address or employment;

    (6) notify the probation officer promptly if arrested or questioned by a law enforcement officer; and

    (7) satisfy such other conditions as the Court may impose.

*See* 18 U.S.C. §§ 3563(b)(8), (12), (15) – (18), (22).

*Third*, one important aspect of promoting respect for the law is encouraging cooperation and truthfulness with law enforcement. Here, following her arrest, the Defendant cooperated with law enforcement. The Defendant waived her rights and agreed to be interviewed by law enforcement.

### E. The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the Government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, to assault on law enforcement officers, to conspiracy to corruptly interfere with Congress. Each offender must be sentenced based on their individual circumstances, but with the backdrop of January 6th in mind. Moreover, each offender's case will exist on a spectrum that ranges from conduct meriting a probationary sentence to crimes warranting years of imprisonment. The misdemeanor defendants will generally fall on the lesser end of that spectrum, but misdemeanor breaches of the Capitol on January 6, 2021 were not minor crimes.

While the number of sentenced defendants is low, we have already begun to see meaningful distinctions between offenders. Those who engaged in felonious conduct are generally more dangerous, and thus, treated more severely in terms of their conduct and subsequent punishment. Those who trespassed, but engaged in aggravating factors, merit serious consideration of

institutional incarceration. While those who trespassed, but did not engage in aggravating factors, may merit the imposition of a significant term of probation along with restrictive mandatory and discretionary conditions. Based upon the Defendant's early acceptance of responsibility and cooperation with law enforcement, the Government has agreed to recommend a sentence in the latter category in this rare case. That sentence would not create an unwarranted sentencing disparity with any other cases. *Cf. United States v. Rosales-Gonzales*, 801 F.3d 1177, 1183 (9th Cir. 2015) (no unwarranted sentencing disparities under 18 U.S.C. § 3553(a)(3) between defendants who plead guilty under a "fast-track" program and those who do not given the "benefits gained by the government when defendants plead guilty early in criminal proceedings") (citation omitted).

### V. Conclusion

For the reasons set forth above, the United States respectfully requests that the Court impose a term of three years of probation, including the mandatory and discretionary conditions set forth above, restitution in the amount of $500, and 40 hours of community service. Respectfully submitted,

CHANNING D. PHILLIPS
ACTING UNITED STATES ATTORNEY
D.C. Bar Number 415793


/s/ Joshua S. Rothstein
Joshua S. Rothstein
Assistant United States Attorney
N.Y. Bar Number 4453759
555 4th Street, N.W., Room 5828
Washington, D.C. 20530
Office: 202-252-7164
Joshua.Rothstein@usdoj.gov